Booth, Judge,
delivered the opinion of the court:
This case comes to the court under section 151 of the Judicial Code. The reference was by the Senate, as evidenced by the following bill:
“A BILL For the relief of Professor William H. H. Hart, principal of the Hart Farm School and Junior Bepublic for Dependent Children.
“ Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of the Treasury be, and he hereby is, authorized and directed to pay to Professor William H. H. Hart, principal of the Hart Farm School and Junior Bepublic for Dependent Children, out of any money in the Treasury not otherwise appropriated, the sum of $1,870,738.60, due him for costs incurred, losses sustained, services rendered, damages suffered, and an annual commercial profit on his undertaking in the ‘ care and maintenance,’ education, vocational, veterinary, mechanical, agricultural, military, and civic training of certain wards of the United States under sundry mandatory acts of Congress (Senate resolution 204, Fifty-eighth Congress, second session), and certain contracts with *538 the Board of Children’s Guardians of the District of Columbia, from November 8, 1897, to June 30, 1906.”
The findings are indispensably voluminous, and while not necessarily involved, the court feels constrained to add to them this opinion, in order to make plain the exact case as it appears to us under this limited jurisdictional act. A controversy so extensive could not well demand less.
The plaintiff in his pleadings sought to largely increase the sum claimed over and above the sum mentioned in the bill, and! the commissioner of the court to whom the case was referred to take evidence and report findings of fact very properly held that the sum stated in the bill limited the total sum the plaintiff might claim under any of the items for which he might ask findings. The jurisdiction of the court extends only to find the facts with reference to “ costs incurred, losses sustained, services rendered, damages suffered, and an annual commercial profit ” on the plaintiff’s undertaking. We may not extend the inquiry beyond what the bill expressly describes as the alleged items of loss. It is the bill and its terms to which we look and not the reference of the same.
The commissioner reported his findings, the plaintiff filed his exceptions thereto, and the case was argued orally before the court.
In the year 1897, and for some time prior thereto, the Board of Children’s Guardians of the District of Columbia could usually find suitable places for caring for its young colored wards, but there were no places available for its older colored wards, and no institution provided for them. The plaintiff, a colored man, owned a farm of about 295 acres twelve miles from Washington, D. C., in Prince Georges county, Maryland, and he subsequently acquired an adjoining tract of 345 acres, and as thus equipped he entered into nine separate written contracts with the Board of Children’s Guardians for the care, education, etc., of the older colored male wards, as appears by the contracts set forth in the findings. The first four years of the contractual relationship of the parties progressed with mutual satisfaction, and it was not until July 1, 1902, that serious dif *539 ferences began to arise. Congress, in the appropriation act of July 1, 1902, inserted the following clause:
“ To enable the Board of Children’s Guardians to contract for the care and maintenance of sixty wards of the board at the Hart Farm School at the rate of two hundred dollars per annum each, twelve thousand dollars.”
The Board of Children’s Guardians was displeased with this legislation and manifestly resented its enactments. The board adopted a construction of the law, which they followed, holding that under its terms they were only legally bound as to the compensation to be paid the Hart Farm School and not otherwise obligated under it. Pursuant to this attitude, they tendered the plaintiff a formal written contract covering the annual period and expiring on June 30,1903. This contract imposed upon the plaintiff many additional duties and requirements not theretofore mentioned in former contracts, and there was for the first time inserted therein a strict penalty clause for failure to observe its terms. The plaintiff vigorously protested against these additional requirements and withheld his signature from the same until October 13, 1902, when he finally signed it. In the meantime, on July 26, 1902, the board withdrew all of its wards from the school, and from July 26, 1902 until October 13,1902, the plaintiff was without any income whatsoever from said school. The board gradually returned wards to the school, the average number for the year being from 18 to 19 until at the end of the year when 60 were finally placed there. The exact situation is set forth in detail in Finding IX. The following Congress, on June 30, 1904, removed all doubt of its intention as expressed in the act of July 1, 1902, by inserting a mandatory clause in the annual appropriation bill, directing the board to contract with the Hart Farm School for the care and maintenance of 60 wards at $200 per annum each, and this act of Congress was substantially complied with thereafter as to the number of wards and the compensation to be paid.
The plaintiff was hard put to secure the necessary funds to maintain the school, and suffered the financial loss set forth in Findings VIII and XXII, due in part directly to *540 the action of the board as therein stated. As a matter of fact, the undertaking by the plaintiff was from a financial aspect disastrous to him, due to many causes, not all ascribable to the board.
In the contract of July 1, 1903, and subsequent contracts there was inserted a provision that in case of any loss or destruction of property through acts by wards of the board, aside from ordinary wear and tear, the board was to recommend to Congress an appropriation to remunerate the plaintiff therefor. On or about April 17, 1903, as appears by Finding XXIII, one of the wards of the board set fire to one of the barns of the plaintiff, at the time filled with grain, farming implements, etc. The loss was a total one, and the board does not seem to have taken any notice of it. And again, in January, 1904, another fire occurred on the portion of the farm leased by the plaintiff, whereby a dwelling and storehouse were totally destroyed, including a considerable amount of personal property belonging to the plaintiff. There is no evidence in the record that the board took any action respecting this loss. The amount of the-loss, proven by the testimony, is set out in the findings.
There are numerous other claims and findings respecting many other items of loss. We need not discuss them in detail. The record is manifestly too indefinite to warrant the finding of any specific amount as to annual commercial profits. The plaintiff was intellectually and physically capable of negotiating the enterprise; he manifested a deep interest in its success, but just what portion of his loss is. directly due to the wrongful and arbitrary action of the board, and what amount is chargeable to his own mismanagement, is a matter we have been unable to determine from the evidence. It is obvious from the findings that the essential element of consistent cooperation of the contracting-parties did not obtain. There were many controversies, acute and prolonged. The board from 1902 until the close-of the relationship undoubtedly continued the maintenance-of the farm with much reluctance. Whether justified in this; respect is not for the court to say. We are alone concerned with ascertaining the facts and reporting the same to Congress. This we have attempted to do.
*541 Plaintiff’s exceptions to the findings are overruled, the report of the commissioner‘is approved, and the findings are ■ordered to be reported to Congress.
Graham, Judge; Hay, Judge; Downey, Judge; and Campbell, Ghief Justice, concur.